**ZENO B. BAUCUS**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone:   (406) 657-6101
FAX:     (406) 657-6989
E-mail:  zeno.baucus@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **JEFFREY EUGENE HERBERT,** Defendant. | CR 22-133-BLG-DLC **UNITED STATES' SENTENCING MEMORANDUM** |

The United States of America, by and through Zeno B. Baucus, Assistant U.S. Attorney for the District of Montana, provides the Court with its sentencing memorandum in aid of sentencing the defendant.

1

## INTRODUCTION

Jeffrey Herbert engaged on a relentless campaign of utilizing minor victims to produce Child Sex Abuse Material (CSAM) for his personal enjoyment. Before graduating to the production of child pornography, however, he engaged in the possession and distribution of this horrific content. He should be sentenced accordingly.

On November 18, 2022, a Montana Grand Jury indicted Herbert with three charges relating charges involving the production, distribution, and possession of child pornography. PSR ¶ 1. Three months later the Grand Jury returned a superseding indictment and levied additional charges, again involving child pornography. PSR ¶ 4. In March 2023, Herbert elected to plead guilty to Counts 1 and 6 of the Superseding Indictment, charging Production and Possession of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B), respectively. PSR ¶ 6. Pursuant to the terms of the plea agreement in this case, the United States intends to dismiss the remaining counts of the Superseding Indictment at sentencing.

The Presentencing Investigation Report ("PSR") has calculated a criminal history category I and an advisory guideline range of 600 months. PSR ¶ 104. Herbert is facing a mandatory minimum fifteen years and a maximum thirty years imprisonment with respect to Count 1 and a maximum term of 20 years with

respect to Count 6. *Id*. at ¶ 103. Neither party has any objections to the PSR and restitution has been requested.

## THE OFFENSE and RELEVANT CONDUCT[1]

*Herbert Possesses Child Pornography in 2008*

In January 2008 Herbert's family computer was brought in for repairs at a Billings area computer shop. When employees began working on the computer they observed a folder entitled "shared" that contained multiple images of naked children and children being sexually abused by adults. PSR ¶10. This prompted an inquiry and, later that month, law enforcement met with Herbert and his parents. *Id*. During that meeting Herbert admitted to utilizing file sharing programs to obtain child pornography, including that showing children as young as 10 or 11 years of age. *Id*.

*Herbert Distributes Child Pornography in 2019*

In April and May 2019, Herbert, utilizing a social media application, engaged in discussions concerning a sexual interest in children, including his own. PSR ¶15. He offered how he was a "38 yo dad with a 9 yo daughter, no limits."

---

[1] While it is black letter law that the Court may consider relevant conduct in sentencing a defendant, here the plea agreement entered between the parties provides that Herbert shall be considered as having convicted of all the counts in the Superseding Indictment for purposes of calculating his recommended guideline range. PSR ¶9. Because of this, the United States contends, all of Herbert's conduct should be afforded significant weight.

Herbert sought to trade CSAM and, in doing so, distributed a video of a juvenile female being sexually assaulted by an adult male. *Id*.

*Herbert Engages in the Systemic Production of Child Pornography*

In June 2022 the parents of a 13-year-old female in New York reported to law enforcement that their daughter, Jane Doe 1, was coerced to self-produce child pornography online via social media application. PSR ¶17. Her parents turned over Jane Doe 1's phone to law enforcement for review and it was determined that Jane Doe 1 and a user, "amberbaby14141," had engaged in close to 900 communications during this period. *Id*. "amberbaby14141," who was later identified as Herbert, was posing as a 14-year-old female and was actively soliciting sexually explicit content from Jane Doe 1. Jane Doe 1 complied and sent multiple videos to Herbert, who was aware of Jane Doe 1's age. PSR ¶18. In an attempt to solicit more contraband from Jane Doe 1, Herbert became increasingly coercive and threatening. He threated to send the videos that she sent him to others. PSR ¶19. He said he would "mess ur life up." Jane Doe 1 pleaded with him to "stop this," but Hebert responded to Jane Doe1 to "stop with the lying and send me the videos!!!" PSR ¶20.

This information lead law enforcement to ultimately secure a search warrant for Herbert's residence and, in October 2022, his house in Billings was searched and electronic information was collected. PSR ¶22. During this event Herbert

4

agreed to be interview and, after equivocating on a number of material points, admitted the following:

- He was an active member on the social media application that had been communicating with Jane Doe 1;

- He sent and received child pornography on that social media application and did so at his place of employment and at home; and

- He admitted to being "amberbaby14141" and had utilized that persona to solicit CSAM from underage females.  He admitted that, if the victims refused, he was coercing them into producing such content.

A review Herbert's phone revealed a treasure trove CSAM, involving numerous victims, found in a hidden application. PSR ¶25.   The folders were organized by names of victims and law enforcement identified potentially 22 minor victims. The content included hundreds of videos and images.  It reflected images and videos of minors around the country self-producing child pornography at Herbert's instruction.  It involved kids as young as 6 engaged in such conduct at bestiality and masturbation.  Some of the videos are several minutes in length.

**Sentencing Analysis and Recommendation:**

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims. Certain of these factors are particularly relevant in determining the defendant's sentence.  It is important to note, however, that the Guidelines are the "starting point," and only one factor for a court to consider in drafting an appropriate sentence. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *United States v. Gall*, 552 U.S. 38, 50 (2007).  However, the instant offenses of conviction are notable with respect to the guidelines.  18 U.S.C. § 3553(b)(2)(A)

6

provides that a sentencing court "shall impose a sentence of the kind, and within the range…" as contemplated by the guidelines unless the court finds aggravating or mitigating factors that are not taken into account by the guidelines. The United States contends those factors are not present here. Indeed, the PSR has determined that Herbert's guideline range is 600 months for the two counts of conviction. PSR ¶ 104. Based on the seriousness of the offense and the need to protect the public, the United States requests that the Court impose a sentence of 360 months with lifetime supervised release.

 Rarely does a sentencing court, especially in a child pornography case, have the adequate sample size of a defendant's historical conduct as it does with respect to Herbert. Over a period of roughly 15 years Herbert was involved, in one way or another, with the possession, receipt, distribution and mass production of child pornography. His actions were prolific. They were abhorrent. And they led to the creation of multiple victims in his wake.

 As an initial matter, considering the active steps Herbert employed to create these images and videos, it may be easy to overlook the simple harm that child pornography presents. The Supreme Court has long recognized that the prevention of sexual exploitation and abuse of children is an "objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756 (1982). "The legislative judgment as well as the judgment found in the relevant literature is that the use of

children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758. The defendant's continued possession (and receipt) of child pornography creates long-lasting harm:

> [T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in the years to come. The . . . ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.

*Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (citations omitted). A sexually abused child who has been photographed must go through life knowing that these images are circulating within the mass distribution system for child pornography. *Ferber*, 458 U.S. at 758 n.9 & 760 n.10 (discussing harms to children caused by child pornography, including violation of their privacy interests).[2] Not surprisingly, courts have upheld significant sentences involving defendants convicted of charges

---

[2] Indeed, consumers of child pornography such as the defendant also create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography").

related to the simple *possession* or transportation child pornography.  *United States v. Sundsmo*, 540 Fed. Appx. 757 (9th Cir. 2013) (188-month sentence for possession of child pornography for individual with previous qualifying sex offense); *United States v. Nam Ngoc Nguyen*, 503 F. App'x. 506 (9th Cir. 2012) (121 months for possession of child pornography); *United States v. Halbert*, 471 F. App'x. 665 (9th Cir. 2012) (120 months for possession of child pornography); *United States v. Soule*, 2007 WL 2962373 (10th Cir. 2007) (sentence above the mandatory statutory minimum of 120 months for second conviction for possession of child pornography affirmed);*United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2008) (Imposition of 180-month sentence for defendant's offense of knowing transportation of child pornography across state lines was not substantively unreasonable); *Untied States v. Lychock*, 578 F.3d 214, 218 (3rd Cir. 2009) (overturning sentence because trial court did not consider seriousness of child pornography offense).

    Here, even though one of Herbert's crimes of convictions is for possession of child pornography, his conduct was significantly more serious.  Following the possession of CSAM in 2008, the distribution of CSAM and the discussions of his desires to sexually abuse his children in 2019, Herbert engaged on a massive campaign to coerce young victims around the country to self-produce CSAM for his personal enjoyment.   Utilizing the anonymity of the internet, Herbert

canvassed social media to hunt for new victims.  And once he found one, he was did not discriminate in the tactics he employed to serve his illegal purpose.  Coercion, threats, emotional affection were, among others, the tools of the trade as he sought out more victims to produce CSAM.   And when certain victims refused, he became become agitated and often expressed anger and become controlling.  He threatened to expose them.  It was a vicious litany of tactics applied by Herbert and it was ruthlessly efficient.  As noted in the PSR, to date it appears that Herbert produced around 310 videos and 60 images of CSAM involving an estimated 22 minor victims that Herbert created.  PSR ¶ 25.  The seriousness of this offense is difficult to overstate and warrants a significant sentence.

      One only needs to consult the victim impact statements from *one* of the victims Herbert created to get a sense of his devastating impact.  Noting that Herbert had a child around the same age as Jane Doe 1, Jane Doe 1's mother writes that Herbert's actions "emotionally" violated her and, as her mother, she is unable to work past the pain inflicted on Jane Doe 1.  PSR ¶ 28.  This Court, unfortunately, is all too familiar with the everlasting harm that befalls victims of child pornography offenses.  Here, and even ignoring the child pornography that Herbert simply possessed, the harm perpetrated on Jane Doe 1 should be multiplied by a factor of at least twenty.

      Moreover, the United States harbors significant concerns that, whatever

sentence is imposed, Herbert is and will remain a threat to the public.  This element of protecting the public, codified for sentencing purposes in 18 U.S.C. § 3553(a)(2)(B)(C), cannot be overlooked when evaluating the totality of Herbert's conduct.  *United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.").  As noted above, he admitted to posing child pornography in 2008 and, after being warned against this conduct, later engaged in a campaign of victimization that will be felt for years.   And it appears that Herbert's did not limit his criminal conduct to the online community as evidenced by a hands-on allegation involving a minor family member that apparently occurred on multiple occasions.  PSR ¶¶ 74-76.  In short, there is very little in Herbert's past to suggest that this conduct is an aberration and that, once released from custody, he will not harm again.  The public must be protected.[3]

In 2019 this Court sentenced a defendant who had utilized social media to seek out victims and coerce them to self-produced CSAM.  In *United States v.*

---

[3] Pursuant to the terms of the plea agreement Herbert was required to obtain a psychosexual evaluation prior to sentencing and provide the report to the United States and United States Probation Office.  No report has yet to be provided as of the submission of this sentencing memorandum, but it is the understanding of the United States that it will be produced prior to sentencing.  As such, and because these evaluations often provide insight as to the recidivist level of a defendant, there may be additional information for the Court to consider at sentencing regarding the defendant's threat to the public.

*Emineth*, CR 18-78-BLG-DLC, this Court sentenced Tyler Emineth to 216 months following a guilty plea to a single count of production of child pornography. Doc. 52. Mr. Emineth, like Herbert, utilized the internet to find juvenile victims for the purpose of having them produce child pornography that they would then send to him for his enjoyment. Doc. 45. Unlike Herbert, however, Emineth did not have a past relating to the possession and distribution of child pornography. As such, the United States submits that Emineth's sentence provides a useful starting point in sentencing Herbert. It also provides additional support why a sentence of 360 months would not be grossly disproportionate to other sentences for the production of child pornography, including in the Ninth Circuit,[4] in the federal court system,[5] and in this district. This is especially true in cases that involve hands-on sexually

---

[4] Ninth Circuit upholding a guideline sentence in a child pornography case. *United States v. Frantz*, 485 F. App'x 890 (9th Cir. 2012); *United States v. Grigsby*, 469 F. App'x 589 (9th Cir. 2012); *United States v. Shigley*, 451 F. App'x 705 (9th Cir. 2011); *United States v. Maier*, 639 F.3d 927 (9th Cir. 2011); *United States v. Aguirre*, 448 F. App'x 670 (9th Cir. 2011); *United States v. Alfaro*, 446 F. App'x 840 (9th Cir. 2011); *United States v. Psick*, 434 F. App?x 646 (9th Cir. 2011); *United States v. Aglony*, 421 F. App'x 756 (9th Cir. 2011); *United States v. Anthony*, 421 F. App'x 674 (9th Cir. 2011); *United States v. Richards*, 414 F. App'x 911 (9th Cir. 2011); *United States v. Carlson*, 395 F. App'x 413 (9th Cir. 2010); *United States v. Blinkinsop*, 606 F.3d 1110 (9th Cir. 2010);

[5] *See United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters); *United States v. Vowell*, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend).

offending against a daughter, niece or family friend, something that has been alleged here. *See United States v. Smith*, No: CR-20-16-M-DWM (D. Mont. Nov. 6, 2020) (defendant was sentenced to 240 months imprisonment after recording sleeping child and distributing videos and images, defendant also sexually abused the child); *United States v. Scholz*, 459 F. App'x 680 (9th Cir. 2011) (No: CR-10-10-H-DWM: defendant recorded himself engaged in sex acts with his 13-year old relative and was sentenced to 210 months imprisonment); *United States v. Weaver*, No. CR-17-57-GF-BMM (D. Mont. May 30, 2018) (defendant sexually abused and produced sexually explicit images of his pre-pubescent relative and was sentenced to 500 months imprisonment); *United States v. Herbst*, 357 F. App'x 42 (9th Cir. 2009) (No: CR-07-103-BLG-JDS: defendant manufactured thousands of pictures and videos of relatives, distributed them, and was sentenced to 70 years in prison); *United States v. Fox*, 357 F. App'x 64 (9th Cir. 2009) (No: CR-07-47-M-DWM: defendant created sexually explicit pictures of himself and a 6-year-old family friend and was sentenced to 110 years in prison; defendant had prior sex abuse conviction); *United States v. Shouse*, 755 F.3d 1104 (9th Cir. 2014) (No: CR-12-071-GF-DLC: defendant who manufactured a video of himself sexually abusing his toddler niece was sentenced to 50 years consecutive to pending state sentence).

    Herbert engaged in a ruthless campaign to possess and produce images and videos of minors engaged in sexually explicit conduct. His conduct was abhorrent

and done without any concern for the numerous victims he left in his wake. Therefore, based on the reasons articulated above and the information contained in the PSR and applicable legal authority, the United States contends that the interests of justice mandate a sentence of 360 months and lifetime supervised release.

DATED this 20th day of November, 2023.

                                        JESSE A. LASLOVICH
                                      United States Attorney

                                      /s/ *Zeno B. Baucus*
                                      ZENO B. BAUCUS
                                      Assistant U.S. Attorney